With the court's permission, I'd like to This is a terrible courtroom and it echoes, so it's a problem. If I don't speak loud enough, please remind me. With the court's permission, I'd like to reserve four minutes for rebuttal. Your Honors, I think there's one overarching issue before the court today, and that is whether Universal can operate an extra-governmental agency, the Title Registration Bureau, register its whisper mark with the Bureau, grant itself exclusive rights, exclude competitors from 95 percent of the theatrical motion picture market, competitors like small independent film producers like myself. And I would like to focus the court's attention for a brief moment on four threshold principles that I think are fundamentally undisputable and which I think govern the outcome of this issue. And the first principle is that the Lanham Act reflects not only those marks that Congress wanted to protect, make protectable, but also reflected those terms that Congress wanted to remain in the public domain. Second, the public domain means exactly what the words denote. It's an area in which the public has supreme title. And the law is very clear that in order to take a term out of the public domain, it must be distinctive, either inherently or through the development of secondary meaning. The third principle is that under the literary title doctrine, film titles such as Universal's Whisper Title are descriptive and can only be removed from the public domain if they've acquired distinctiveness. Yes. In this case, you are appealing the denial of your motion for primary injunction. That's correct, Judge. That's a very high standard for us to define that the district court should have given you a point of injunction. So your argument is that Universal, by having this registration system, took the mark away from the public. Is that what you're arguing? Well, you know, there's two arguments, one under the Lanham Act, one under Section 17-200. Let's address the one under Section 17-200. So you don't have anything under Section 17-200 unless you have something under the Lanham Act, because you have to have an unlawful act in order to get there. Yes. So let's address the issue relating to 17-200. Judge White, the district court judge, in his order, excerpt record, page 398, expressly stated that the Universal's Title Registration Bureau did not violate the Lanham Act and also did not harm competition. As a matter of fact, I can quote directly. I understand. So why was that wrong? If there's no violation of the Lanham Act, then you don't have a violation of Section 17-200. I think, Judge, that's a clear violation of the Lanham Act. Why don't you tell us why? Yes, I'll do so. First and foremost, the subject matter of the Title Registration Bureau granting exclusive rights falls squarely within the subject matter covered by the Lanham Act. And the Lanham Act and all the case law, going back about a century, is very clear that you can't remove a term from the public domain unless it's You're the one who's claiming the trademark protection. You're the one who's seeking to enjoin them from using this, not the other way around. Oh, absolutely. I have trademark rights in my particular term. Well, but let's look at the timing. Actually, Whisper got going, really, before you did, if you look at the time chain. Now, it seems to me that when we get far, if you were to get farther down the road and you were using Whisper for your movie and the other Whisper sought to enjoin you, then you might have some arguments. But it seems to me at this point you don't have anything that needs to be protected particularly. Nobody's stopped you from using it. No one's stopping me from using it. I cannot expand beyond where I am without the consent of Universal. What you're arguing about is that because your mark isn't registered with their bureau, registration bureau, is that your argument? Judge, because, number one, I have not submitted to their rules pursuant to the title registration bureau, I'm precluded from 95 percent of the theatrical motion picture market. Now, an important fact. That's not an issue, though. That's not a trademark issue, is it? Oh, it definitely is. It falls squarely within the subject matter of the Lanham Act. And here, let me tell you why. Because a trademark must, you cannot go up and go into the public domain like they have and regulate it. It's an extra-governmental agency. The law is very clear that in order to take a term out of the public domain, it must be distinctive either inherently or through the development of secondary meaning. So how is it being taken out of the public domain in your view? What they have done is they've usurped from the public domain more than 70,000 terms that are free for competitors to use until such point in time as there's secondary meaning. But you're not, your whole case here is not premised on using this for the movie. It's premised for using it for the website. Nobody has any interest in whether you're using it for the website. Judge, in order for me to expand, the whole purpose of the website is, and this is a critical factor for small independent film producers today, they need to create advanced awareness. So I can, and they need to develop secondary meaning in their mark as it relates to a film title. The way to do it is to, and the great equalizer today is the Internet. You can develop a film website that can promote and drive traffic to it, that can create this synergy that supports the movie. Has anybody told you you can't use this as a name of a movie? Very definitely, unless I submit to the rules of the Title Registration Bureau, I'm precluded from 95 percent of the theatrical motion picture market. Okay. The issue is whether or not if you're a member of that organization and you've agreed to let them police the names under which the movies are released. I cannot use that name and have access to 100 percent of the theatrical motion picture market until I submit to the rules, the Title Registration Bureau agreement, which I think on its face is unconscionable. But I don't understand why that's what this case is about, because you don't have a movie yet. There's no movie. No. There's no movie. No, there's no movie, but in today's theatrical motion picture business, a website, a web presence is equally as important as a movie. They're closely integrated. As a matter of fact, frequently in television film programs, they'll go up and seed the film or the television program with URLs that will direct people to the movie, and there's a tremendous potential synergy there. The studios have spent millions of dollars trying to tap into that synergy, and they're very, very complementary in terms of the synergy that can be developed. It's a critical factor for small independent film producers to have the ability to go up and create a trademark right and also access the market. The critical thing, judges, is they don't do this. But the organization is not preventing you from creating a trademark right. The organization is preventing me to accessing 95 percent of the theatrical motion. Okay, but they're not preventing you from having a trademark right. No, ma'am. As it relates to the Internet website, what they are doing, however, and I'm really encroaching on my time, what they are doing, however, is making it impossible for me to proceed because I am precluded from 95 percent of the markets unless I submit to their draconian rules that are one-sided.  Thank you very much. Thank you. Good morning. Daniel Maeda of Leopold Petrich & Smith for the defendant at Universal City Studios. May it please the Court, I'd like to begin by just framing this panel's task on this appeal, the denial of a preliminary injunction. The review in this case is very limited and deferential, asking only whether the district court has abused its discretion. This panel may not second-guess the district court, whether the district court correctly applied the law to the facts. No reversal, even if this panel would have arrived at a different result. Here, the district court issued a careful, detailed 13-page order that analyzed the plaintiff's arguments, identified the relevant law, made factual findings based on the party's submissions, including citations to the record, and reached a sound conclusion justifying the denial of preliminary injunction. The plaintiff has not come close to establishing that the district court has abused its discretion and this order should be affirmed. Let me address the plaintiff's, seems to be the appellant's, main argument dealing with the Title Registration Bureau. Have there been any other cases dealing with the Title Registration Bureau in terms of antitrust law or trademark law preemption or anything like that? Yes. As a matter of fact, this same plaintiff in regard to this same project previously brought a case, Guichard v. Mandalay Pictures. It's cited in our appellate brief. And in that case, the plaintiff also sued, in that case, I believe, the members of the Title Registration Bureau, the various motion picture studios, and made the same arguments that this is a violation of the antitrust, the Sherman Act. It violates his right to use various titles. It's anti-competitive because it supposedly represents 95 percent of the distributors and so forth. And the judge rejected that, and we cited that case in our appellate brief. And the response and the reply was that we are not allowed to argue collateral estoppel because we didn't cite it below. And the reason we didn't cite it below is because the plaintiff is making these arguments for the first time on appeal. But in any event, whether or not that case is collateral estoppel, it clearly is very persuasive on the argument of whether this plaintiff, this appellant, is precluded from titling his motion picture project, his as-yet-unproduced project, anything he wants. The only thing in the record that explains what the Title Registration Bureau is and does is the Fortuna Declaration. And this is the initial Fortuna Declaration, which is in the record. And in that declaration, the head of the title registration, head of title certification for Universal, explains that the Title Registration Bureau does not remove words from the public domain, but instead regulates the priority of use of titles of motion pictures that are theatrically exhibited. As an example, the movie Cinderella, which I'm sure you recognize. Of which, I'm sorry? Cinderella. Yes. The Walt Disney movie in 1950 is so-called permanently protected by the Title Registration Bureau. But that did not prevent the James Caan movie in 1973, Cinderella Liberty, nor did it prevent the Russell Crowe boxing movie, Cinderella Man, just in 2005. There was a movie called Crash in 1996, a David Cronenberg film. That did not prevent the Academy Award-winning movie Crash in 2004. So the Title Registration Bureau only regulates priorities, so that there's not two motion pictures with the same title or confusingly similar titles being released theatrically at the same time. If they're released a year apart or several months apart, no problem. Nothing is actually removed from the public domain. Another point I think that the plaintiff, the felon, is trying to make is this notion that somehow the Lanham Act is this overarching federal statute, which precludes things like the Title Registration Bureau's activities. But it's not. This panel, I'm sure, is familiar with the Copyright Act, which is a statute which provides broad federal preemption. There can be no state laws or state regulations that infringe upon the federal policy of the Copyright Act. Lanham Act is not that way. The Lanham Act does regulate federal trademarks, but you can also have state registration of trademarks. You can protect trademarks by common law through simply by use. And you can have private contract disputes or private contract agreements that regulate the use of a trademark in the United States. In any event, it doesn't seem to me that this case is the case to address any of this because there's no movie. And he hasn't – he's not trying at this point – he says there's got to be a movie, but there is no movie. That is correct, Your Honor. In fact, this plaintiff, the felon, has been trying to make his movie for the past 10 years. It's purely speculative, among other things, that the Title Registration Bureau is the reason why he's not able to get the financing to produce this picture. And yet that seems to be his argument. In addition, he has not yet, by his own admission, the plaintiff has not even attempted to register his own title, Whisper of the Blue. He says that all sorts of onerous conditions would be imposed upon him were he to try to register. Well, what would those onerous conditions be? It's beyond me, Your Honor. There's nothing in the record to suggest that there are such onerous conditions. In fact, the conditions apparently are so minimal that many, most perhaps, of the distributors and producers belong to the Title Registration Bureau. It's a very, very efficient way to regulate titles because that way you don't have tremendous investment in a motion picture title. In marketing, which goes back several years from the release date, you don't have studios making those investments and only to find out at the very last minute that there's an injunction proceeding. So they submit their titles in advance. They sort out when one title's going to go and when one title has to stay back and so forth. One thing I would like some help with just conceptually. Sure. Titles can't be, as such, are not trademarked, cannot be trademarked. Is that right? Well, it might be possible for a title, for instance, a series of books, as an example, like a Lord of the Rings, that perhaps could have a trademark protection. Or it could be trademarked if it's used for T-shirts or something, I presume. There can be trademark uses of a motion picture title. But then there seems to be some doctrine that says, but it can acquire secondary meaning, which is the movie. So that doesn't make any sense to me. I mean, the fact that it's then associated with a movie, of course it's going to be associated with a movie. So how can that then turn a non-trademarkable something into a trademarkable something? Just as an example, Lord of the Rings as an example. That when people think of or hear Lord of the Rings, they only think of a particular thing. They only think of the source, the particular book, or in this case the motion picture. So it has some secondary meaning in the public's mind. They don't think of other products or other kinds of things when they hear that title. What about here? Is Whisper trademarked? No. I mean, it is a mark, but it's not used by the defendant in any trademark fashion. Certainly not on the Internet, which is really the only thing that the plaintiff appellant has. Or as the title for the movie, because that wouldn't be a trademark use. It isn't. You're not claiming that. We are not claiming. Secondary meanings. We are not claiming that. And it's not our burden to establish that we have exclusive rights to use the title Whisper. I think it would be very difficult, given how crowded the field is with titles like Whisper, Whispers, and other titles, using a variation of that. That's something the district court correctly found in its findings. And the fact that it's so crowded means that consumers are not likely to be confused by one Whisper title versus another. They're going to try to sort it out for themselves, as they normally do when it comes to motion picture titles. I guess the main point I want to make, besides the talk about the antitrust, is these are really two different marks. In order for the plaintiff to prevail, he has to show that these marks are substantially similar, that there's likelihood of confusion as to the two marks. In M2 software, this Court found that there must be evidence that the confusion is probable, not merely possible, and that the plaintiff must show that the use of the defendant's mark, in this case Whisper, was likely to confuse an appreciable number of people as to the source of the defendant's product. In this case, the plaintiff has not come close to meeting that standard. The bottom line, the plaintiff's mark, Whisper of the Blue, is exceedingly weak based on this record. The plaintiff relies almost exclusively on presumptions from his trademark registration, but that registration protects the plaintiff's trademark only on the Internet, and the defendant has not used its mark, Whisper, as a trademark fashion or as a domain name on the Internet. And to the extent the plaintiff has any protection at all, it extends solely to the entire four-word phrase, Whisper of the Blue, which the defendant has never used. Thus, this Court clearly, the district court clearly did not abuse its discretion in denying preliminary injunction in this case. Finally, defendant requests the recovery of its costs on appeal, since whatever minimal merit the plaintiff's claim might have had on a complete record, and the plaintiff's trademark, this appeal on this record in light of the district court's extensive order is truly frivolous. And unless there are any more questions from the panel, the defendant will rest on the record. Thank you very much. Cancel. Your Honor, in regards to whether there is exclusive rights, under the title Registration Bureau procedures, Universal has been granted exclusive rights for a descriptive term that's in the public domain, and exclusive rights for 95% of the theatrical motion picture market. And I think that is where the unfair competition comes from and flows from. They can go up and establish rights, and just based amongst an agreement between six corporations, the most sophisticated corporation, dividing up the public domain, they have those rights. They're precluded from me. And it's only at their mercy could I ever acquire rights. That's what's problematic. And the other thing to keep in mind, if they're so concerned this procedure works so well for theatrical motion pictures, why don't they get it? Do you have anything in this record that demonstrates any economic injury due to this inability to register the movie that doesn't exist, or the inability to use the name for a movie that doesn't exist? Well, Your Honor, they registered their title when it didn't exist. And they got exclusive rights when it didn't exist. And here's where the damage is, Your Honor. Do you have any reason to think that if you went and wanted to register your name, you couldn't get a right to that? Your Honor, I would have to submit to their rules, to a contract of adhesion. They're the ones that are making the determination. It's not an impartial panel. So it has nothing to do. So in that sense, it has nothing to do with what name they're using. Because if the name of your movie was, you know, Google or Blue or whatever, you still have the same problem because you don't want to register with them. Your Honor, I don't want to register with them because I think the agreement is fundamentally unfair. I understand it. But it has nothing to do with the fact that there's some minor overlap between the two titles. Can I show you where the damages are? Are you listening to what I'm saying? Yes. All right. Suppose the name of your movie was Joe. Okay. You'd still have the same problem, right? That I, in order to get access, I would have to register with the title registration. It has nothing to do with your purported similarity of the names. You just don't want to register with them. Oh, it has a lot to do with it. Why? I have a claim under the Lanham Act in which I'm arguing. I understand that. But with regard to this other issue. Regarding, I'm precluded from 95 percent of the market. Right. But it has nothing to do with the name. With the overlap in the names. Nothing. It could. Theoretically, yes. Because they have permanent protection. Exclusive permanent protection for their whisper mark. Now, permanent protection for a mark, that exceeds what a copyright. Apparently it's not permanent. There are two movies named Crash in there. We all know that the names get repeated. No, no, Judge. It's a deal amongst themselves. The six studios decide, cut side deals as it relates to those marks. And I set forth in my brief specifically what they look for in terms of making a determination and whether they're going to go up and accept a, what is the budget of the movie? What is the status of the scripts? Investment already expended. Proximity to principal photography. Theme and plot. None of that has anything to do with other than protecting their own interests. And that's when, before they even have a movie, they get protection. Thank you, Judge. Thank you very much. Your time is up. The name of Guichard v. Universal City Studios. The case is submitted. And we'll go to Judy.
judges: Fletcher, Berzon, Rawlinson